FILED & JUDGMENT ENTERED
David E. Weich

May  19  2006

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| PIEDMONT VENTURE MANAGEMENT, ) | Case No. 05-32242 |
| INC., and ) | Chapter 7 |
| ) | |
| PIEDMONT VENTURE CAPITAL ) | Case No. 05-32243 |
| MANAGEMENT, INC., ) | Chapter 7 |
| ) | |
|        Debtors. ) | |
| ) | |
| ) | |
| DELORES RAY and WILLIAM RAY, ) | Adv. Proc. No. 05-03517 |
| Individually and on behalf of all other Limited ) | (Consolidated with |
| Partners of Piedmont Venture Partners, ) | Adv. Pro. No.: 05-03519) |
| LP and Piedmont Venture Partners II, LP ) | |
| ) | |
|        Plaintiffs, ) | |
| vs. ) | |
| ) | |
| STACY E. ANDERSON, an individual; ) | |
| WILLIAM W. NEAL, an individual; ) | |
| PIEDMONT VENTURE MANAGEMENT, ) | |
| INC., an enterprise corporation; ) | |
| PIEDMONT VENTURE CAPTIAL ) | |
| MANAGEMENT, LLC, a limited liability ) | |
| corporation; PIEDMONT VENTURE ) | |
| PARTNERS, LP, a North Carolina Limited ) | |
| Partnership; and PIEDMONT VENTURE ) | |
| PARTNERS II, LP a Delaware Limited ) | |
| Partnership, ) | |
| ) | |
|        Defendants. ) | |

1

## ORDER

This matter is before the Court on Motions to Dismiss of Defendants Anderson and Neal. A hearing was held on March 30, 2006. Having reviewed the parties' briefs and supporting legal authorities, the undersigned concludes that the Defendants' Motions should be **GRANTED.**

## STATEMENT OF FACTS

This adversary proceeding stems from Plaintiffs' unsuccessful investments in two limited partnerships, Piedmont Venture Partners, LP ("PVP I") and Piedmont Venture Partners II, LP ("PVP II"), jointly known as the ("Funds"). PVP I is a North Carolina limited partnership; PVP II, a Delaware limited partnership.

The Funds were set up in the late 1990's by Defendants Stacy E. Anderson ("Anderson") and William W. Neal ("Neal") as venture capital investment vehicles. Anderson and Neal operated the Funds through Piedmont Venture Management, Inc. ("PVM") and Piedmont Venture Capital Management, Inc. ("PVCM"), together serving as the general partners of the Funds ("General Partners"). Anderson and Neal are also the shareholders of PVM and PVCM and additionally served as officers and directors of these corporations.

Delores and William Ray (the "Ray's"), along with other qualified individual and institutional investors purchased limited partnership interests in the Funds, investing a total of $45,000,000. It would appear the Funds were not successful. Just why they failed is the topic of this action.

## PRIOR PROCEEDINGS

2

Each of the General Partners filed a voluntary Chapter 7 bankruptcy case in this Court May 27, 2005. On November 2, 2005, the Plaintiffs filed a Fed.R.Civ.P. Rule 23.1 derivative action in each case, putatively on behalf of the limited partnerships and against the named Defendants. The complaints were first amended and then consolidated into the current adversary proceeding.[1]

The consolidated, Amended Complaint asserts a variety of claims against the Defendants, including fraud, misrepresentation, breach of fiduciary duty, and breach of contract. Anderson and Neal have responded with this Motion to Dismiss under Fed.R.Civ.P. Rule 12(b)(6).

## MOTION TO DISMISS STANDARD

Fed.R.Civ.P. Rule 12(b)(6) applies in bankruptcy adversary proceedings. See Fed.R.Bankr.P. 7012(b)(6). The standard by which such motions are considered is as follows:

> [T]he Court must accept the factual allegations in the Plaintiff's Complaint and must construe those facts in the light most favorable to the plaintiff[ ] …. [Dismissal may occur] only if it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [her] claim that would entitle [her] to relief. To survive a motion under Fed.R.Civ.P. 12(b)(6), a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief. If relief could be granted under any set of facts that could be proved consistent with the allegations, the motion must be denied.

*Farmer v. Lowe's Cos., Inc.*, 188 F. Supp. 2d 612, 614 (W.D.N.C. 2001)(citations omitted).

## ANALYSIS

---

[1] The Complaints were filed in each of the Debtors' cases. See Adv. Nos. 05-3519 and 05-3517. By consent, the two proceedings have been consolidated under the current adversary proceeding number. See Consent Order Granting Motion to Consolidate Adversary Proceeding dated Dec. 20, 2005.

3

Although Defendants make several arguments why this action should be dismissed, there is a threshold issue the disposition of which renders the other issues moot. That issue is: May the Plaintiffs maintain a derivative action on behalf of these limited partnerships under Rule 23.1 without having previously made a demand on the General Partners for the Funds to sue on these claims? Plaintiffs admit that they did not make such a demand, but under the circumstances believe it to be a futile act.

### I. Demand

In the usual Rule 23.1 derivative action, individual shareholders sue to enforce a right of their corporation, where the corporation has failed to assert the right itself. Often these suits are brought against officers and directors of the corporation. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95 (1991).

Rule 23.1 applies to limited partnerships under the Revised Uniform Limited Partnership Act ("RULPA"). Both North Carolina and Delaware have adopted the RULPA and their laws on Rule 23.1 actions are almost identical. Each state allows derivative actions, but each requires a limited partner before filing such a claim, (1) to make demand on the general partner of the limited partnership to bring the suit directly, and (2) for that demand to have been refused. N.C. Gen. Stat. §§ 59-101 *et seq.;* 6 Del. Code Ann. § 17-1001. The demand requirement may be excused only where the complaint demonstrates circumstances of futility; that is, the demand would not be likely to succeed. *Id*.

Here, Plaintiffs did not make a demand on the limited partnerships or their General Partners before filing this action. Thus, the first question presented is whether their Amended Complaint describes circumstances demonstrating futility.

4

The Plaintiffs say the Amended Complaint accuses the General Partners and their controlling principals, Anderson and Neal, of malfeasance and fraud in the conduct of the limited partnership's affairs. For this reason, they believe a demand on these partnerships to sue directly would be a futile act and tantamount to asking the Defendants to sue themselves.

Defendants counter that even if true, such allegations are legally insufficient to demonstrate futility within the meaning of these statutes. They support their argument with a North Carolina Court of Appeals case: *Cabaniss v. Deutsche Bank Securities, Inc.,* 170 N.C. App. 180, 183-4, 611 S.E. 2d 878, 881 (N.C. App. 2005). That action involved a Rule 23.1 complaint which alleged demand would be futile because the alleged wrongdoers made up a majority of the partnership's management committee. Applying Delaware law, the Court of Appeals held such an allegation legally insufficient to demonstrate futility. *Id*. at 183.

Defendants further contend that rather than bypass the demand requirement, Plaintiffs should have made a demand on the General Partners through their Chapter 7 bankruptcy trustee, or alternatively, elected new general partners for the limited partnerships and made demand on them.

This Court agrees with Plaintiffs that *Cabaniss* is not controlling: a case involving some conflicted decision makers is distinguishable from one in which all of the decision makers are impugned. In the former circumstance, at least in theory, the conflicted persons could be excluded from the decision to sue. This is not possible where all of the decision makers have a conflict.

5

I also reject the suggestion that demand could have been made on the two General Partners via their Chapter 7 trustee. Ordinarily a business is not operated in Chapter 7. In fact, the trustee must obtain specific court approval to operate a debtor's business. 11 U.S.C. § 721. In non-operating Chapter 7 cases, as we have here, the bankruptcy trustee could not unilaterally approve the filing of such a suit on behalf of the limited partnerships, nor would he (for liability reasons) be likely to do so.

However, the motion does not turn on these points. Rather, the decision is driven by state partnership law.

Under the RULPA, a general partner's voluntary bankruptcy ends the general partner's involvement in a limited partnership. When the general partner files a voluntary bankruptcy petition, the general partner automatically ceases to be a member of the limited partnership. It is removed as general partner and unless the limited partners take curative action, the bankruptcy filing leads to the dissolution and winding up of the limited partnership. *See* N.C. Gen. Stat. §§ 59-402, 59-801, 59-803; 6 Del. Code Ann. §§ 17-101(10), 17-402, 17-801, 17- 803.

That being so, the question arises, does the General Partners' bankruptcy filing constitute futility of demand for Rule 23.1 purposes? If so, would it support Plaintiffs' contention that they were proper parties to file this derivative action? This is a novel question, such that the undersigned was not optimistic about the prospects of finding case authority addressing the issue from any state, let alone North Carolina or Delaware.

Surprisingly, a search on this topic revealed a recent North Carolina decision directly on point. Even more remarkable, that new state case involves the same limited partnerships, general partners, and operant facts as those involved in the current

6

bankruptcy court dispute. And as it turns out, the state decision was pending when these motions were heard in bankruptcy court.[2]

That said, in *Ray v. Deloitte & Touche* (the "State case") the Ray's sought to bring a Rule 23.1 derivative action in the Mecklenburg County Superior Court, on behalf of the two Funds against its outside accountants. *Ray v. Deloitte & Touche, L.L.P*, No. 05-CVS-15862, 2006 WL 1064503 (N.C. Super. Ct. Apr. 21, 2006)(unpublished). The action sought recovery of the same investment losses as those at issue in this adversary proceeding. The state suit was certified to the North Carolina Business Court and assigned to Superior Court Judge Albert Diaz.

There the accounting firm defendants filed motions to dismiss the Complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule 12(b)(6)"). These motions were heard on February 28, 2006. The motions presented the same issues as those before this bankruptcy court, i.e., given the insolvency of the General Partners, may individual limited partners file a derivative action on behalf of the Funds without making a demand?

In a well-crafted decision, Judge Diaz concluded that the limited partners could not. Because the limited partners, (1) failed to exhaust the "intracorporate" remedies available to them under the Funds' Partnership Agreements and (2) failed to make a demand on the proper partnership representative to bring this action or otherwise explain why such a prior demand was impractical, the action could not be maintained. Judge Diaz

---

[2] Just why the parties failed to mention the pending state action to this court is a mystery. However, discovery of the state decision delayed this ruling, as the bankruptcy decision had to be substantially revised to address the state holding.

7

dismissed the Complaint without prejudice to Plaintiffs' ability to re-file this action upon compliance with the demand requirements imposed by Delaware and North Carolina law.

In his decision, Judge Diaz speaks to the intracorporate remedies argument that is made by the Defendants in the current dispute. Judge Diaz notes that the Funds' Partnership Agreements contemplate the possibility that a General Partner may file bankruptcy and each affords the limited partners a mechanism for handling the Funds' affairs. Specifically, Fund I, gives the limited partners ninety (90) days to agree to continue the Fund and to elect a new General Partner. If they fail to do so, the Agreement provides for the election of a liquidator to dissolve and wind up the affairs of the Fund. Fund I Agreement, §10.1.

Fund II is similar. Here, the limited partnership is to be dissolved upon the bankruptcy of its General Partner. Fund II Agreement § 14.2; 6 Del. Code Ann. § 17-402(a). A majority of the limited partners are entitled to select a liquidator to wind up the partnership's affairs. Fund II Agreement § 14.5.

Because the Plaintiffs did not allege that they attempted to comply with the Partnership Agreements by appointing a new General Partner or a liquidator following the bankruptcy of the Funds' General Partners, Judge Diaz concluded that they had failed to exhaust their intracorporate remedies. His ruling on this point is premised on another recent North Carolina Business Court decision, *In re Pozen,* which notes, "[S]tates universally require shareholders to exhaust all intracorporate remedies before taking advantage of the derivative action and show that the corporation itself had refused to proceed after suitable demand." *In re Pozen S'holders Litig.*, Nos. 04-CVS-1540, 04-CVS-1542, 2005 WL 3035783 at *6 (N.C. Super. Ct. Nov. 10, 2005)(unpublished).

8

As Judge Diaz points out, this requirement avoids unnecessary interference in corporate governance of a business and with directors whose role it is to manage. *Ray,* 2006 WL 1064503, at *5. Therefore, in a derivative action, more stringent requirements of factual particularity apply and conclusory statements or mere notice pleading are insufficient. *In re Pozen*, 2005 WL 3035783, at *6. If a plaintiff fails to meet this heightened pleading requirement through particularized factual allegations in the complaint, then the complaint must be dismissed. *Id.*

Judge Diaz applies these principles to the facts of his (or perhaps better said, "our") case. The General Partners filed for bankruptcy in May of 2005. Three (3) months later, the Ray's filed this lawsuit. They did not allege they made demand on the General Partners; rather they argued that this was futile because PVM and PVCM were dominated by Anderson and Neal.

The futility argument Judge Diaz notes is not really a correct representation since the bankruptcy of the General Partners ended their involvement in the Funds. Since the Ray's did not (1) allege they had complied with the Partnership Agreements by electing a substitute General Partner or liquidator, (2) make a demand on these persons, nor (3) explain why compliance with this requirement was impractical, Judge Diaz concluded they had not exhausted their intracorporate remedies and could not proceed with a derivative action. *Ray,* 2006 WL 1064503, at *5. As such, the action had to be dismissed.[3]

---

[3] The Business Court noted that under Delaware law, a plaintiff should not be afforded the opportunity to amend the complaint where he or she fails to properly plead demand futility. *See, In re Pozen,* 2005 WL 3035783 *15.

9

In matters involving state law, where there is no decision by the highest state court, a federal court "must apply what [it] find [s] to be the state law after giving proper regard to relevant rulings of other courts of the State." *Barnes v. Thompson*, 58 F.3d 971, 982 (4th Cir. 1995) (Murnaghan J., concurring). Technically, a federal court is not bound by a state trial court's interpretations of state law. *In King v. Order of United Commercial Travelers of Am.*, 333 U.S. 153, 161 (1948); *But see*, 19 Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4507 (1982). However, absent compelling reasons to believe the state's highest court would overrule a lower state court's conclusions state courts are to be afforded deference in predicting how the state's highest court would rule. This is particularly true when the dispute involves traditional state-law issues and where the state trial court has particular expertise in the area. *See Barnett Bank of South Florida v. F.D.I.C.*, 883 F.Supp. 707, 709 (S.D. Fla. 1995).

This deference is not difficult to afford in the present situation. Here the state case is a mirror image of this federal bankruptcy proceeding, involving identical underlying facts and legal issues, and all but the same parties. Additionally, the matter is a traditional state law matter (partnership law) and the North Carolina Business Court is one with particular expertise in this area. Finally, this court has reviewed Judge Diaz's legal conclusions and entirely agrees.

As such, this Bankruptcy Court adopts Judge Diaz's reasoning, and not surprisingly, comes to the same conclusion. Reserving any other Rule 12 arguments, Plaintiffs have failed to prevail on the threshold issue, of demonstrating futility of

demand due to their failure to exhaust their intracorporate remedies. Consequently, they may not maintain the adversary proceeding under Fed.R.Civ.P. Rule 23.1.

## ORDER

For these reasons, the Court hereby **ORDERS** this action be **DISMISSED WITHOUT PREJUDICE.**

| | |
|---|---|
| **This Order has been signed electronically.  The judge's signature and court's seal appear at the top of the Order.** | **United States Bankruptcy Court** |